IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| CHRISTINE TEMPLE<br>1109 Pinehurst Ave.<br>Royal Oak, MI 48073<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>HENRY FORD HEALTH SYSTEM<br>One Ford Place 5B<br>Detroit, MI 48202<br><br>　**Serve also:**<br>　Marjorie Staten, Resident Agent<br>　One Ford Place 5B<br>　Detroit, MI 48202<br><br>　　　　　Defendant. | CASE NO.<br><br>JUDGE:<br><br><br><br>**COMPLAINT FOR DAMAGES AND REINSTATEMENT**<br><br>**JURY DEMAND ENDORSED HEREIN** |

Plaintiff, Christine Temple, by and through undersigned counsel, as her Complaint against Defendant Henry Ford Health System ("HFHS"), states and avers the following:

## PARTIES.

1. Temple is a resident of Royal Oak, county of Oakland, state of Michigan.

2. HFHS is a Michigan nonprofit corporation whose principal place of business is One Ford Place 5B, Detroit, MI 48202.

3. HFHS was at all times hereinafter mentioned an employer within the meaning of the Americans with Disabilities Act ("ADA"), 42 U.S.C. 126 § 12101 *et seq*.

## JURISDICTION & VENUE.

4. HFHS hires citizens of the state of Michigan, contracts with companies in Michigan, and owns or rents property in Michigan. As such, the exercise of personal jurisdiction over HFHS comports with due process.

5. This cause of action arose from or relates to the contracts of HFHS with Michigan residents, thereby conferring specific jurisdiction over HFHS.

6. This court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 and 1341 inasmuch the matters in controversy are brought pursuant to the ADA.

7. This Court has supplemental jurisdiction under 28 U.S.C. § 1367 over Temple's state law claims because those claims derive from a common nucleus of operative facts.

8. Venue is proper in this District because it is the District in which HFHS maintains its principal place of business.

## ADMINISTRATIVE HISTORY.

9. Within 300 days of the conduct alleged below, Temple filed a Charge of Discrimination against HFHS with the Equal Employment Opportunity Commission ("EEOC"), Charge No. 532-2023-02558 (the "EEOC Charge.")

10. On or about November 2, 2023 the EEOC issued and mailed a Notice of Right to Sue letter to Temple regarding the EEOC Charge which has been attached hereto as Plaintiff's Exhibit A.

11. Temple has filed this Complaint within 90 days of the issuance of the Notice of Right to Sue letter.

12. Temple has properly exhausted her administrative remedies pursuant to 29 C.F.R. § 1614.407(b).

## FACTUAL ALLEGATIONS.

13. Temple is a former employee of HFHS.

14. HFHS hired Temple as a Valet Driver on or about August 29, 2022.

15. Temple only has one vocal cord.

16. As a result of having only one vocal cord, prolonged speech causes Temple pain.

17. Temple's lack of vocal chords substantially limits Temple's major life functions, including speaking.

18. Temple's lack of vocal chords is a permanent, lifelong condition.

19. Temple is disabled within the meaning of the ADA and the Michigan Persons With Disabilities Civil Rights Act ("PWDCRA,") MCL 37.1101 *et seq.*

20. As Temple's disability directly impacts her ability to speak, it is immediately observable to anyone she speaks to.

21. Despite her actual or perceived disabling condition, Temple's Disability did not prevent Temple from performing the essential duties of her job: mainly parking and retrieving cars.

22. HFHS did not tell Temple prior to her hire that her job would require her to do a lot of talking beyond that required to perform her essential job functions.

23. HFHS did not tell Temple prior to her hire that her job would require her to do a lot of "social" speaking, i.e., to engage in idle conversation or small talk, or to discuss anything beyond what was necessary to enable Temple to retrieve and park cars.

24. Engaging in idle conversations or small talk, or other conversations unrelated to parking and retrieving cars, is not an essential job duty for a Valet Driver at HFHS.

25. Despite her limitations, Temple was told to be "more friendly" to customers and co-workers alike when her hesitation to speak beyond what was necessary to perform her job was perceived as her snubbing others.

26. On September 1, 2022, Temple notified HFHS's Human Resources Department ("HR") that the nonessential talking she was being forced to perform was putting her in significant pain.

27. On September 5, 2022, Temple applied for HFHS's Patient Transport position.

28. The Patient Transport role would not require Temple to speak as often as the Valet Driver role.

29. The Patient Transport role would provide Temple with frequent breaks and wait times throughout the day during which Temple would not have had to use her vocal cords.

30. The Patient Transport position would not have put Temple in as much pain as did the Valet Driver position, if any.

31. The Patient Transport position would not have been a promotion for Temple but a lateral transfer.

32. HFHS had vacant Patient Transport positions available at the time Temple sought to be reassigned.

33. Temple's application for the Patient Transport position, coupled with her September 1, 2023 message to HR constituted an accommodation request ("Accommodation Request").

34. Temple's Accommodation Request was reasonable.

35. Temple's Accommodation Request did not cause HFHS an undue hardship.

36. HFHS did not determine if Temple's Accommodation Request would cause an undue hardship.

37. After the Accommodation Request, no one at HFHS engaged in an interactive process to find a reasonable accommodation for Temple's disability.

38. When HFHS failed and/or refused to consider Temple's Accommodation Request, Temple unilaterally applied for the Patient Transport position.

39. On September 12, 2023, Temple interviewed for the Patient Transport position.

40. On September 15, 2022, HFHS denied Temple the Patient Transport position.

41. HFHS's failure to hire Temple for the Patient Transport position was an act of discrimination against Temple due to her Disability.

42. Cathy Podvin ("Podvin"), HR Manager and Patricia Seagram ("Seagram"), Vice President of HR for HFHS followed up with Temple later that day (the "Interrogation").

43. During the Interrogation, Podvin and Seagram grilled Temple as to why, having the Disability, Temple applied to the Valet Driver position.

44. Temple clarified that the activity which her disability limits, excessive speech, is not an essential duty of the Valet Driver role.

45. Temple further clarified that as HFHS did not make her aware of the amount of speech she would be asked to perform in the Valet Driver role, Temple was unable to predict the amount of pain which this job would put her in.

46. Podvin and Seagram then laughed and scoffed at Temple's explanation of her disability and how it affects her.

47. As the Interrogation continued, instead of seeking to help Temple and accommodate her Disability, Podvin and Seagram continued to prod Temple into making an admission that she was unable to perform the essential duties of her job as a Valet Driver.

48. Temple made no such admission, as Temple was perfectly capable of performing the essential duties of her job as a Valet Driver.

49. The Interrogation was an attempt by HFHS to obtain pretext for terminating Temple's employment.

50. The Interrogation was not a good faith attempt by HFHS to engage in the interactive process required by the ADA.

51. On September 20, 2022, Podvin, Seagram, and several other HFHS managers met with Temple to continue to seek a pretext on which to base her termination (the "Second Interrogation").

52. During the Second Interrogation, HFHS complained about days during which Temple came to left work early.

53. Temple explained to HFHS that she had left work early due to pain from being required to engage in excessive talking.

54. HFHS retaliated against Temple for taking this needed time off by writing her up (the "Write Up")

55. HFHS gave Temple the Write Up in retaliation for Temple's attempts to receive necessary, legally-required accommodations in order to perform her job.

56. Temple's working conditions were so difficult, unpleasant and intolerable that the reasonable person in her position would feel compelled to resign.

57. Temple could "see the writing on the wall" that HFHS was imminently working towards terminating her employment.

58. Faced with an untenable position at HFHS. Temple was forced to resign her employment on September 23, 2022.

59. Upon information and belief, upon Temple's resignation, HFHS hired or retained a non-disabled individual to replace Temple.

60. As a result of HFHS's conduct, Temple suffered, and will continue to suffer damages.

**COUNT I: CONSTRUCTIVE DISCHARGE IN VIOLATION OF THE ADA.**

61. Temple restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

62. At all times referenced herein, HFHS was aware that Temple was disabled and/or regarded Temple as disabled.

63. Alternatively, HFHS was aware that Temple suffered from a physical impairment and/or regarded Temple as suffering from a physical impairment.

64. Despite her disabling condition, Temple was fully competent and qualified for her position and was capable of performing her essential job duties with or without accommodation.

65. On September 23, 2022, Temple was forced to accept her constructive discharge when HFHS began targeting her for discipline and continually pressured her to make false admissions that she was unqualified for her position because of her disability.

66. As a result of HFHS's discrimination against Temple in violation of the ADA, Temple has been denied employment opportunities providing substantial compensation and benefits, thereby entitling Temple to injunctive, equitable, and compensatory monetary relief.

67. As a result of HFHS's discrimination against Temple in violation of the ADA, Temple has suffered mental anguish and emotional distress, including, but not limited to, depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering.

68. In its discriminatory actions as alleged above, HFHS acted with malice or reckless indifference to the rights of Temple, thereby entitling Temple to an award of punitive damages.

69. To remedy the violations of the rights of Temple secured by the ADA, Temple requests that the Court award her the relief prayed for below.

## COUNT II: FAILURE TO ACCOMODATE IN VIOLATION OF THE AMERICANS WITH DISABILITY ACT.

70. Temple restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

71. Temple informed HFHS of her Disability.

72. Temple requested accommodations from HFHS to assist with her Disability, including not being required to speak beyond what was necessary to perform her essential job duties and/or being transferred to a position that required less speaking.

73. Temple's requested accommodations were reasonable.

74. There was an accommodation available that would have been effective and would have not posed an undue hardship to HFHS.

75. HFHS failed to engage in the interactive process of determining whether Temple could perform her essential job duties with an accommodation.

76. HFHS failed to provide any accommodation to Temple at all.

77. HFHS violated The Americans with Disabilities Act (ADA) 42 U.S.C. 126 § 12101 et seq when it failed to provide Temple with the accommodation(s) she requested and/or to engage in an interactive process to identify potential accommodations.

78. As a direct and proximate result of HFHS's conduct, Temple suffered and will continue to suffer damages.

## COUNT III: RETALITION IN VIOLATION OF THE ADA.

79. Temple restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

80. Further, the ADA provides that "[i]t shall be unlawful to coerce, intimidate, threaten, or interfere with any individual in the exercise or enjoyment of, or on account of his or his

having exercised or enjoyed… any right granted or protected by this chapter." 42 U.S.C § 12203(B).

81. HFHS violated the ADA's anti-retaliation provisions when it responded to Temple's protected requests for accommodation by constructively discharging her employment.

82. HFHS's conduct violated conduct violated 42 U.S.C § 12203(B).

83. As a result of HFHS's retaliation against Temple in violation of the ADA, Temple has been denied employment opportunities providing substantial compensation and benefits, thereby entitling Temple to injunctive, equitable, and compensatory monetary relief.

84. As a result of HFHS's retaliation against Temple in violation of the ADA, Temple has suffered mental anguish and emotional distress, including, but not limited to, depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering.

85. In its retaliatory actions as alleged above, HFHS acted with malice or reckless indifference to the rights of Temple, thereby entitling Temple to an award of punitive damages.

86. To remedy the violations of the rights of Temple secured by the ADA, Temple requests that the Court award her the relief prayed for below.

**COUNT IIIV: CONSTRUCTIVE DISCHARGE IN VIOLATION OF THE MPWDCRA.**

87. Temple restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

88. At all times referenced herein, HFHS was aware that Temple was disabled and/or regarded Temple as disabled.

89. Alternatively, HFHS was aware that Temple suffered from a physical impairment and/or regarded Temple as suffering from a physical impairment.

9

90. Despite her disabling condition, Temple was fully competent and qualified for her position and was capable of performing her essential job duties with or without accommodation.

91. On September 23, 2022, Temple was forced to accept her constructive discharge when HFHS began targeting her for discipline and continually pressured her to make false admissions that she was unqualified for her position because of her disability.

92. As a result of HFHS's discrimination against Temple in violation of the MPWDCRA, Temple has been denied employment opportunities providing substantial compensation and benefits, thereby entitling Temple to injunctive, equitable, and compensatory monetary relief.

93. As a result of HFHS's discrimination against Temple in violation of the MPWDCRA, Temple has suffered mental anguish and emotional distress, including, but not limited to, depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering.

94. In its discriminatory actions as alleged above, HFHS acted with malice or reckless indifference to the rights of Temple, thereby entitling Temple to an award of punitive damages.

95. To remedy the violations of the rights of Temple secured by the MPWDCRA, Temple requests that the Court award her the relief prayed for below.

### COUNT IV: DISABILITY DISCRIMINATION - FAILURE TO ACCOMMODATE IN VIOLATION OF THE MPWDCRA.

96. Temple restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

97. Temple informed HFHS of her Disability.

98. Temple requested accommodations from HFHS to assist with her Disability, including not being required to speak beyond what was necessary to perform her essential job duties and/or being transferred to a position that required less speaking.

99. Temple's requested accommodations were reasonable.

100. There was an accommodation available that would have been effective and would have not posed an undue hardship to HFHS.

101. HFHS failed to engage in the interactive process of determining whether Temple could perform her essential job duties with an accommodation.

102. HFHS failed to provide any accommodation to Temple at all.

103. HFHS violated the MPWDCRA when it failed to provide Temple with the accommodation(s) she requested and/or to engage in an interactive process to identify potential accommodations for her.

104. As a direct and proximate result of HFHS's conduct, Temple suffered and will continue to suffer damages.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Christine Temple requests judgment in her favor against Defendant, Henry Ford Health System containing the following relief:

(a) An order directing HFHS to place Temple in the position she would have occupied but for HFHS' unlawful treatment of her, as well as to take such affirmative action as is necessary to ensure that the effects of these unlawful employment practices and other unlawful conduct are eliminated and do not continue to affect Temple;

(b) An award of damages in an amount to be determined at trial, but in excess of $25,000.00, plus prejudgment interest, to compensate Temple for all monetary and/or economic damages, including, but not limited to, the loss of past and future income, wages, compensation, job security and other benefits of employment;

(c) An award of damages in an amount to be determined at trial, but in excess of $25,000.00, plus prejudgment interest, to compensate Temple for all non-monetary and/or compensatory damages, including, but not limited to, compensation for his mental anguish and emotional

11

distress, humiliation, depression, embarrassment, stress and anxiety, loss of self-esteem, self-confidence and personal dignity, and emotional pain and suffering and any other physical or mental injuries;

(d) An award of damages in an amount to be determined at trial, but in excess of $25,000.00, plus prejudgment interest, to compensate Temple for harm to her professional and personal reputation and loss of career fulfillment;

(e) An award of damages for any and all other monetary and/or non-monetary losses suffered by Temple in an amount to be determined at trial, but in excess of $25,000.00, plus prejudgment interest;

(f) An award of punitive damages;

(g) An award of costs that Temple has incurred in this action, as well as Temple's reasonable attorneys' fees to the fullest extent permitted by law; and

(h) Awarding such other and further relief that this Court deems necessary and proper.

Respectfully submitted,

*s/ Chris P. Wido*
Chris P. Wido (OH # 0090441)
*Admitted to the E.D Mich*.
**SPITZ, THE EMPLOYEE'S LAW FIRM**
25825 Science Park Dr., Suite 200
Beachwood, OH 44122
Phone: (216) 291-4744
Fax:     (216) 291-5744
Email: chris.wido@thespitzlawfirm.com

*Attorney For Plaintiff*

## JURY DEMAND

Plaintiff Christine Temple demands a trial by the maximum number of jurors permitted.

*s/ Chris P. Wido*
Chris P. Wido (0090441)